UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Lindley ROBERTS,
Defendant–Appellant.

No. 89–5224.

United States Court of Appeals,
Fourth Circuit.

Argued May 10, 1990.

Decided Sept. 12, 1990.

Denise Benvenga, argued (Fred Warren Bennett, Federal Public defender, Baltimore, Md., on brief), for defendant-appellant.

Beth Perovich Gesner, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before MURNAGHAN, Circuit Judge, SMITH, Senior United States Circuit Judge for the Federal Circuit, sitting by designation, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

Thomas Lindley Roberts has appealed his conviction and resulting five-year provisional sentence for sending a threatening letter to Justice O'Connor of the United States Supreme Court. He argues that the evidence was insufficient to support his con-

viction and that the court's provisional sentence violates equal protection principles.

## I.

In December 1987 the defendant sent a letter to the chambers of Supreme Court Justice Sandra Day O'Connor providing as follows: "To O'Connor: Since the court insists upon violating my kids' rights to life (survive), you are all now notified that either Brennan,[1] Stevens [2] or Kennedy [3] is to die." The letter was viewed as a possible threat and led to an investigation by the Federal Bureau of Investigation. The FBI determined that the defendant was involuntarily committed at the Veterans' Administration Hospital at Perry Point, Maryland. In the course of an ensuing interview, Roberts gave an indication that attitudes on abortion were a principal cause for his having written the letter. While he stated that he had "a love in his heart" for all the Justices of the Supreme Court, he found no conflict between that love and his desire to kill.

Thereafter, the FBI deferred action until November 1988, when it caused the complaint to be sworn out for the threatening communication. At trial the agent in charge of the investigation explained that at the time the complaint issued Roberts' status at Perry Point changed. He became a voluntary patient with grounds privileges. The change in status led the FBI to feel it was under a duty to take action to prevent Roberts from leaving the Perry Point grounds.

Following a trial,[4] in which Roberts' illness was identified as paranoid schizophrenia, the jury returned a verdict of guilty, in violation of 18 U.S.C. § 115, of having made the threats contained in the December 1987 letter.

1. Justice William J. Brennan, Jr., then an active member of the United States Supreme Court.

2. Justice John Paul Stevens of the United States Supreme Court.

3. Justice Anthony M. Kennedy, now a member of the United States Supreme Court, but in De-

## II.

Roberts first argues that the letter was not a true threat. The statute under which Roberts was convicted provides in relevant part that

[w]hoever—threatens to assault, kidnap, or murder ... a United States judge ... with intent to impede, intimidate, or interfere with such official, ... while engaged in the performance of official duties, or with intent to retaliate against such [judge] shall be punished....

18 U.S.C. § 115(a)(1)(B). Referring to a similar provision protecting the President (18 U.S.C. § 871), the Supreme Court found that a threatening statement must amount to a "true threat." *Watts v. United States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 1401–02, 22 L.Ed.2d 664 (1969). Courts have reversed convictions in which the threat was uttered as a part of a political protest or as an idle gesture. *See, e.g., Watts*, 394 U.S. at 706, 89 S.Ct. at 1400–01; *United States v. Olson*, 629 F.Supp. 889, 894 (W.D.Mich.1986) (threat to President Reagan made in context of defendant's political views not a true threat).

Roberts correctly does not contend that the government must prove his intention or present ability actually to carry out the threat. Rather he argues that the context in which the words were written, the specificity of the threat, and the reaction of a reasonable recipient familiar with the context in which the words were written are factors which must be considered and that in his case those factors show the letter was not a true threat. *See United States v. Davis*, 876 F.2d 71, 73 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 188, 107 L.Ed.2d 143 (1989) (recipient's state of mind as well as actions taken in response relevant to determination of a true threat); *United States v. Maisonet*, 484 F.2d 1356, 1358 (4th Cir.1973), *cert. denied*, 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974)

cember 1987 a member of the United States Court of Appeals for the Ninth Circuit.

4. Before trial, the government did move to determine the competency of Roberts to stand trial. After a hearing, the district court found Roberts competent.

(ordinary recipient familiar with the context of the letter relevant to interpretation of it as a threat); *United States v. Callahan,* 702 F.2d 964, 966 (11th Cir.) *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983) (letter specifying time, date, and place of threatened assassination constituted a true threat).

We must construe the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469–70, 86 L.Ed. 680 (1942). Generally, what is or is not a true threat is a jury question. *Maisonet,* 484 F.2d at 1358. While a relevant consideration is whether "an ordinary reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury," *Maisonet,* 484 F.2d at 1358, there is no requirement that the actual recipient testify. The evidence showed that both Justice O'Connor's secretary and the Supreme Court police took the letter quite seriously as did the FBI. Roberts argues that those particular recipients are trained to be suspicious. While that may be so, the twelve jurors certainly consist of the requisite reasonable people. Their conclusion that the letter constituted a true threat cannot be said to be an unreasonable one. The evidence, taken in the light most favorable to the government, supports the jury's finding that Roberts is guilty beyond a reasonable doubt.

### III.

After conviction, the district court held a hearing pursuant to 18 U.S.C. § 4244(c) to determine if Roberts suffered from a mental disease or defect. Both parties agreed that Roberts did suffer from such a mental disease or defect. Consequently the district court, in lieu of sentencing Roberts, followed the dictates of the statute directing that Roberts be

> [committed] to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for care or treatment in a suitable facility. Such a commitment constitutes a provisional sentence of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty.

18 U.S.C. § 4244(d). The district court then provisionally sentenced Roberts to five years, the maximum allowed by statute. 18 U.S.C. § 115.

Roberts argues that the phrase "maximum term authorized by law" means the maximum authorized under the sentencing guidelines. 18 U.S.C. §§ 3551 *et seq.* In Roberts' case that would work out to a sentence of six to twelve months. By not using the guidelines range, Roberts contends that he is being denied equal protection of the law. *See* U.S. Const. amend. V and amend. XIV.

In support of his argument, Roberts compares his situation to that of prisoners who need mental health care *during* their sentence and are thus covered under 18 U.S.C. § 4245(d). Under that statute prisoners who need mental health care during their sentence may go to a "suitable facility until [they] no longer [are] in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." Thus Roberts argues that if his defect had not been present until after his sentencing, he would have received a sentence within the guidelines range and then received treatment until the expiration of that sentence.

In order to establish that he was denied equal protection of the law, Roberts must show that similarly situated persons are subject to disparate treatment, and that this disparate treatment has no rational basis. *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 489, 97 S.Ct. 1898, 1908–09, 52 L.Ed.2d 513 (1977); *Johnson v. Robison,* 415 U.S. 361, 374–75, 94 S.Ct. 1160, 1169–70, 39 L.Ed.2d 389 (1974). Those defendants subject to §§ 4244, 4245 and 4241 (which refers to persons incompetent to stand trial) are not similarly situated. Section 4241 applies to defendants found to be mentally *incompetent* to stand trial. Section 4244 applies to competent persons found to be suffering from a mental disease prior to sentencing, and section 4245 applies to competent persons found to be mentally ill, while serving

their sentences. Clearly those statutes apply to different types of mentally ill patients who cannot be lumped together into a group consisting of people with mental problems facing federal prosecution.

Furthermore, the statutes do not treat the mentally ill differently. Each statute sets definite standards for the length of commitment. Though the defendant attempts to compare them to the procedurally infirm situations that have been struck down, such is not the case here. *See, e.g., Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) (indefinite commitment of incompetent defendant violates due process and equal protection).

Finally, even if disparate treatment of those similarly situated could be found, such a classification will be sustained if it is rationally related to a legitimate governmental interest. *See Ohio Bureau of Employment Servs. v. Hodory*, 431 U.S. at 489, 97 S.Ct. at 1908–09. Roberts' claim of an equal protection violation must fail.

In addition, despite Roberts' contention that the statutory maximum is synonymous with the maximum sentence allowed under the sentencing guidelines, such is manifestly not the case. Apart from the fact that the indicated sentence under the sentencing guidelines is subject to upward departure in appropriate cases, the words "maximum sentence" are generally understood to and often employed to refer to the greatest amount of punishment that the law will permit. *See, e.g.,* 18 U.S.C. § 3559(b)(2) ("an offense [described in the previous section] ... carries all the incidents assigned to the applicable letter designation, except that the maximum term of imprisonment is the term authorized by the law describing the offense"). Congress amended § 4244 in 1984, the same year that it enacted the guidelines. As the district court noted, if Congress had wanted maximum term authorized by law to mean maximum term authorized by the sentencing guidelines, it could have said so.

Furthermore, the sentence is only a provisional one, in place only as long as the defendant's disease continues. Should Roberts recover, he will be returned to the district court for definitive sentencing. At such time, in the absence of grounds for upward departure, presumably Roberts would be sentenced within the range specified by the guidelines as well as credited for any time already served. Any upward departure that turned a six to twelve-month guidelines recommendation into a five-year sentence would have to be justified with substantial reasons. *See United States v. Palta*, 880 F.2d 636, 639–40 (2d Cir.1989).

For the foregoing reasons, the judgment of the district court is

AFFIRMED.