**Frank Arnold NESBITT, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 91–0860–AM.
Crim. No. 89–0371–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 6, 1991.

Justin Williams, Asst. U.S. Atty., for U.S.

Gregory B. English, Alexandria, Va., David Hopkins, Thomas Berger, Fairfax, Va., for petitioner.

## MEMORANDUM OPINION

ELLIS, District Judge.

This matter is before the Court on a motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. Petitioner, Frank Arnold Nesbitt, is currently incarcerated at the Federal Correctional Institution at Butner, North Carolina, pursuant to a guilty plea in this Court for transmitting top secret national defense infor-

mation to the Union of Soviet Socialist Republics (Soviet Union). Petitioner now attacks the validity of his guilty plea and asserts various constitutional reasons why his conviction should be vacated. The matter has been fully briefed and is ripe for disposition. For the reasons stated below, the Court DENIES petitioner's motion and dismisses this action.

## I.

On October 14, 1989, petitioner was arrested on a criminal complaint charging him with transmitting national defense information to agents of the Soviet Union. Subsequently, petitioner was named in a two-count indictment charging him with (1) conspiracy to commit espionage and (2) transmission of national defense information to representatives of the Soviet Union. Given petitioner's affidavit of indigency and consistent with Rule 44, Fed.R.Crim.P. and 18 U.S.C. § 3006, two attorneys were appointed to represent him. These attorneys, David Hopkins and Thomas Berger, promptly mounted a vigorous defense, including the filing of numerous pre-trial motions. Following disposition of these motions, trial was set for February 2, 1990.

On February 1, 1990, petitioner pled guilty to transmitting top secret national defense information to the Soviet Union. The Court conducted a lengthy plea hearing pursuant to Rule 11, Fed.R.Crim.P. in order to confirm the voluntariness of the plea and to ensure that the plea was supported by a factual basis containing each of the elements of the offense charged. In the course of this hearing, petitioner confirmed that his plea was voluntary, that he understood the charges and the nature of the proceedings, and that he committed the crime. Petitioner also related the facts of his association with Soviet representatives, including the nature of the documents he transferred. Following a brief recess, during which petitioner consulted with counsel, the Court accepted petitioner's plea.

At sentencing, petitioner moved for a determination of his then-existing mental condition pursuant to 18 U.S.C. § 4244. The record on this motion includes reports of psychiatric or psychological examinations by Martha E. Davis, M.D., Forensic Fellow, Mental Health Division, F.C.I. Butner, North Carolina; Sally C. Johnson, M.D., Chief of Psychiatric Services; Jeff Musgrove, M.A., Psychology Intern; and Edward E. Landis III, Ph.D., Staff Psychologist. Based on these reports, the Court, on April 26, 1990, found that petitioner was then suffering from a mental disease or defect and committed petitioner to F.C.I. Butner, North Carolina, a facility specializing in treatment and care of such disorders. Thereafter, as required by the Court's Sentencing Memorandum of April 26, 1990, the Director of F.C.I. Butner filed a certificate stating that petitioner had recovered from his mental condition to such an extent that he was no longer in need of care or custody for treatment. *See* 18 U.S.C. § 4244(e). Accordingly, petitioner is now scheduled to be returned to this Court for sentencing.

Petitioner now seeks to set aside his guilty plea and gain his release from custody. Specifically, petitioner makes the following allegations:

(1) that his guilty plea was involuntary because he was not mentally competent to understand the nature of the charges and proceedings;

(2) that his guilty plea was induced by the statements of his attorneys;

(3) that his Fifth Amendment right against self-incrimination was violated when petitioner confessed following a statement by Federal Bureau of Investigation (FBI) agents that he would not be prosecuted;

(4) that the prosecution failed to disclose exculpatory evidence, including taped conversations and statements of witnesses before whom petitioner recanted his confession; and

(5) that he was denied effective assistance of counsel.

## II.

The background facts are easily summarized. In August and September of 1989, in Sucre and La Paz, Bolivia, petitioner met on numerous occasions with representa-

tives and agents of the Soviet Union. Petitioner subsequently traveled to the Soviet Union and, while there, disclosed to agents of the Soviet Union certain classified information relating to the national defense of the United States. The petitioner had previously acquired this information during his service in the United States Air Force and the United States Marine Corps, during which time he held a top secret security clearance and had access to classified information.

More specifically, on or about September 16, 1989, at the direction of Fedor Timofeev, an agent of the Soviet Union assigned to the Soviet Embassy in La Paz, petitioner traveled from La Paz to Lima, Peru. In Lima, petitioner met with an unidentified agent of the Soviet Union, who provided him with a ticket from Lima to Moscow on Aeroflot, the Soviet Union's airline. On September 19, 1989, petitioner used this ticket to travel to Moscow. Agents of the KGB, the Soviet intelligence service, met petitioner at the Moscow airport and transported him to a "safehouse."

Over the next ten days, petitioner met regularly with Soviet agents. In response to their questions, he disclosed top secret and other classified information relating to the signals intelligence activities of the United States. Petitioner knew or had reason to know that the information could be used to the injury of the United States and to the advantage of the Soviet Union. In return for his disclosure of such classified information, petitioner received a payment of $2,000.00 from an agent of the Soviet Union in Moscow. Petitioner was also provided with a return airline ticket from Moscow to Kingston, Jamaica. On September 30, 1989, petitioner used the ticket provided to him by Soviet agents to travel from Moscow to Kingston and then to Guatemala City, Guatemala.

The information disclosed by petitioner in the Soviet Union consisted of more than sixty pages of handwritten text, including maps and diagrams. This information concerned United States' signals intercept activities directed against the Soviet Union. Experts from the National Security Agency have reviewed this material and determined that it relates to the national defense of the United States and is still classified, in some cases at the top secret level.

### III.

To be valid, a guilty plea must be made by a defendant who is mentally able to make the decision to plead guilty, *Shaw v. Martin*, 733 F.2d 304 (4th Cir.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 230, 83 L.Ed.2d 159 (1984), and who is aware of the consequences of his plea. *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973); *see also Bryant v. Cherry*, 687 F.2d 48 (4th Cir.), *cert. denied*, 459 U.S. 1073, 103 S.Ct. 497, 74 L.Ed.2d 637 (1982); *Bell v. United States*, 521 F.2d 713 (4th Cir.1975). The plea must be voluntary, not induced by threats, and made with the competent assistance of counsel. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *see also United States v. Teller*, 762 F.2d 569 (7th Cir.1985); *Hammond v. United States*, 528 F.2d 15 (4th Cir. 1975).

The transcript of the plea proceedings of February 1, 1990, clearly establishes that petitioner's plea met these requirements. A full inquiry was conducted in accordance with Rule 11, Fed.R.Crim.P. Petitioner acknowledged that he understood his answers were under oath and that if he failed to answer truthfully he could be prosecuted for perjury or for making a false statement. The Court gave petitioner a detailed description of the charge against him and the elements of the offense. The Court also informed petitioner of the constitutional rights he would waive by pleading guilty. Petitioner acknowledged that he understood his constitutional rights and the nature of the charges against him. He also confirmed that he was satisfied with the advice and counsel of his appointed attorneys. When asked if anyone had made any promise or threat to him in order to induce him to plead guilty, petitioner

responded, "No, sir."[1] Finally, when the Court asked him if he committed the crime, petitioner stated unequivocally, "Yes, sir."[2]

■ In *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), the Supreme Court stated:

... the representations of the defendant, his lawyer, and the prosecutor at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. 431 U.S. at 73-4, 97 S.Ct. at 1628-29.

Petitioner has failed to surmount the formidable barrier created by his in-court representations. Sworn responses in a plea proceeding are conclusive unless the movant can demonstrate compelling reasons for questioning their truth, such as ineffective assistance of counsel. *Via v. Superintendent, Powhatan Correctional Center,* 643 F.2d 167 (4th Cir.1981); *see also Edmonds v. Lewis,* 546 F.2d 566 (4th Cir.

1976), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *Edwards v. Garrison,* 529 F.2d 1374 (4th Cir.1975), *cert. denied,* 424 U.S. 950, 96 S.Ct. 1421, 47 L.Ed.2d 355 (1976); *Crawford v. United States,* 519 F.2d 347 (4th Cir.1975), *cert. denied,* 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976), *overruled on other grounds, United States v. Whitley,* 759 F.2d 327 (4th Cir.), *cert. denied,* 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 164 (1985).

■ Rule 32(d), Fed.R.Crim.P. provides that subsequent to imposition of a sentence, a guilty plea may be withdrawn pursuant to 28 U.S.C. § 2255. The applicable standard under § 2255 to set aside a guilty plea requires demonstration of a fundamental defect resulting in the complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *United States v. Hoskins,* 910 F.2d 309, 311 (5th Cir.1990). Petitioner's claims of an involuntary guilty plea do not meet this standard.[3]

Petitioner now asserts that at the time of his plea he was not mentally competent to enter a guilty plea. Specifically, petitioner states that he suffered from mental depression, a fact he claims is confirmed by the

---

1. Transcript of Plea Colloquy, at 8.

2. Transcript, at 18.

3. Petitioner apparently contends that the proper standard for a plea withdrawal in the circumstances is found in Rule 32(d), not § 2255. Rule 32(d) provides "before sentence is imposed" the applicable standard of review for withdrawal of a plea is "a showing by the defendant of any fair and just reason." Petitioner cites *United States v. Barker,* 514 F.2d 208 (D.C.Cir.1975), which held that where defendants filed motions to withdraw guilty pleas after tentative sentencing under 18 U.S.C. § 4208(b), but before final sentencing, the "fair and just reason" standard applicable to presentence motions would apply. However, *Barker* involved defendants who were committed to the custody of the Attorney General under § 4208(b). Unlike § 4244(d), § 4208(b) did not specifically denominate the commitment a "provisional sentence." Furthermore, *Barker* was decided prior to the 1983 amendments to Rule 32(d). Moreover, even if the "fair and just reason" standard were applicable, petitioner's motion would still fail for the reasons set forth in

this opinion. Petitioner has shown no fair and just reason for permitting him to withdraw his plea.

In any event, it seems likely that § 2255 is the appropriate standard. § 2255 applies to prisoners "in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." Petitioner is confined by court order pursuant to 18 U.S.C. § 4244(d), which states that "[s]uch a commitment constitutes a *provisional sentence* of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty." [emphasis added] *See also United States v. Roberts,* 915 F.2d 889, 891 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991) (referring to commitment under § 4244(d) as a "sentence"). Thus, although not yet definitive, a sentence of ascertainable duration has been imposed upon petitioner, and the portion of Rule 32(d) invoking the § 2255 standard governs.

results of the court-ordered psychiatric examinations. Reports of these examinations disclosed that petitioner was, in fact, suffering from a mental disease or defect.

 A plea is invalid if the petitioner's mental capacities are so impaired as to interfere with his appreciation of the charges, his understanding of his constitutional rights, or his realization of the consequences of the plea. *United States v. Truglio*, 493 F.2d 574 (4th Cir.1974). Petitioner has not met this standard; he has failed to establish that he was incapable of understanding his rights or the consequence of his guilty plea. In his petition, petitioner discusses at great length his psychological problems. Yet he never claims that his depression or other mental disorder caused him to be so confused during the proceedings that he was incapable of understanding the nature or consequences of his guilty plea. Indeed, a review of the transcript of the plea proceedings discloses that petitioner was fully aware of the nature and consequences of the proceedings.

First, as stated above, petitioner indicated to the Court that he understood he was pleading guilty and that he was waiving all rights to a jury trial. He also told the Court that he was guilty of the crime. Second, when asked by the Court to tell the story in his own words, petitioner recited detailed facts of his meetings with representatives of the Soviet Union. He then explained the nature of the documents transferred to those officials by stating that although he knew they were classified, he did not believe the documents were top secret. Petitioner claimed that he made a concerted effort to limit the information he provided to Soviet agents by revealing only stale material that was not, in his view, crucial to national security. Finally, petitioner expressed to the Court, through counsel, his concern that neither the United States Attorney nor the Court seek a sentence longer than the ten year statutory maximum.[4] Petitioner's statements during the plea proceedings were coherent, well-organized, and relevant. He did not exhibit signs of confusion during questions from the Court or during his recitation of the facts of his association with the Soviets. On the contrary, the substance and tenor of petitioner's statements and questions to the Court indicated that he was fully capable of rendering a valid guilty plea.

 Petitioner also charges that his guilty plea was invalid based upon his counsel's coercive statements and a denial of effective assistance of counsel. First, petitioner claims that his attorney coached his responses during the plea colloquy and that one of his attorneys stated that the status of his motion to dismiss did not matter because "this judge is building you a gallows." Petitioner claims that this statement by counsel coerced him into pleading guilty. Yet, nothing about this remark, assuming it was made, could reasonably be considered coercive. Moreover, petitioner had already decided to enter the plea. In addition, during the plea proceedings, petitioner stated that he was fully satisfied with the advice and assistance he had received from counsel. His current allegations directly contradict that and other sworn statements.

Despite petitioner's contention that he was coached on his answers, he makes no claim that he was instructed to answer the Court's questions *falsely* or that he was threatened with harm if he did not answer *falsely*. The Fourth Circuit has held that a petitioner's failure to allege that his answers to the court's questions during plea proceedings were false or induced by threats supports the presumption that the plea was voluntary. *Edmonds*, 546 F.2d at 567–68. In *Edmonds*, the court noted that statements made in open court may not be disregarded absent allegations that the statements themselves were false. As Judge Russell noted, to hold otherwise would undermine both the oath and the judicial process. Here, petitioner does not directly assert that his sworn answers at the plea hearing were false. He has presented no persuasive facts or circumstances to warrant questioning or disbeliev-

4. Transcript, at 3.

ing his prior sworn statements and answers in the plea proceeding.

■ The same reasoning disposes of petitioner's claim of ineffective assistance of counsel. Again, petitioner's sworn responses in the plea colloquy contradict this claim. But, even assuming, *arguendo*, that petitioner had complained at the hearing about the quality of his counsel's assistance, he would nonetheless fail to state a claim of ineffective assistance of counsel. Under *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the test for determining attorney effectiveness in the context of a guilty plea is the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, petitioner must show that the attorneys' representation fell below an objective standard of reasonableness. *Id.* at 689–90, 104 S.Ct. at 2065–66; *see also Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (quoting *McMann*, 397 U.S. at 771, 90 S.Ct. at 1449, that the advice given must not have been "within the range of competence demanded of attorneys in criminal cases"); *Marzullo v. State of Maryland*, 561 F.2d 540 (4th Cir.1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) (test for effectiveness of counsel measures attorney conduct against competence generally found in the profession). Second, petitioner must demonstrate prejudice, namely, a reasonable probability that but for his attorneys' unprofessional errors, the result of the proceeding would have been different. *Hill*, 474 U.S. at 57, 106 S.Ct. at 369; *see also Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir.1983), *cert. denied*, 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984); *Goodson v. United States*, 564 F.2d 1071 (4th Cir.1977); *Horne v. Peyton*, 356 F.2d 631 (4th Cir.), *cert. denied*, 385 U.S. 863, 87 S.Ct. 119, 17 L.Ed.2d 90 (1966). Nothing in the record persuasively indicates that counsel's representation of petitioner fell short of the reasonableness standard. Even so, such a finding is unnecessary here, since petitioner has failed to show prejudice.

First, petitioner claims that his counsel's tardiness in filing a notice of intent to use psychiatric evidence to disprove his confession precluded the use of such evidence at trial. Petitioner overlooks, however, that the Court ruled prior to trial that even if timely, such evidence would be inadmissible. Therefore, any delay in filing the notice was wholly inconsequential and not prejudicial. Similarly, petitioner can show no prejudice from his counsel's failure to notify an expert witness of the trial date. Petitioner concedes that, although he would not have been available on the first day of trial, the expert witness would have been available to testify on the second day of a trial that would undoubtedly have lasted several days. Thus, petitioner's claim of ineffective assistance of counsel in this respect also fails under the prejudice prong of the *Strickland* test.

## IV.

Petitioner claims that FBI agents coerced him into pleading guilty by assuring him that he was not in danger of prosecution. In so claiming, he seeks to establish that his Fifth Amendment right against self-incrimination was violated. This claim is meritless. This Court previously denied petitioner's pretrial suppression motion after finding that his various statements and confessions were both voluntary and not made in a custodial setting. Thus, no *Miranda* warnings were required. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Petitioner presents no new information, nor any new reasons, to persuade the Court to reverse its previous decision. *See Durkin v. Taylor*, 444 F.Supp. 879 (E.D.Va.1977) (no basis to alter or amend an order previously entered where plaintiff raised nothing new in his motion to vacate judgment); *see also Johnson v. City of Richmond*, 102 F.R.D. 623 (E.D.Va.1984) (following *Durkin*); *Frito–Lay of Puerto Rico v. Canas*, 92 F.R.D. 384 (D.Puerto Rico 1981) (same).

## V.

■ Finally, petitioner claims that the FBI concealed exculpatory evidence that would invalidate his confession. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194,

10 L.Ed.2d 215 (1963). Specifically, petitioner states that FBI agents tape-recorded interviews with him during which he confessed to committing espionage and that those recordings have now disappeared.[5] Again, during the pretrial suppression hearing the Court determined, based upon testimony by Supervisory Special Agent Horan, that interviews with petitioner were not taped. Petitioner advances no new basis for disbelieving the testimony of agent Horan. Beyond this, petitioner seeks to save his claim by alleging that witnesses were available who could have testified at trial either that petitioner recanted his confession or that petitioner was not involved in the transmission of documents to the Soviet Union. Specifically, petitioner asserts: (1) that a physician at the Copacabana Hotel in La Paz administered drugs and oxygen to him and that the doctor could have testified that petitioner was too ill to attend meetings; (2) that he renounced his confession in an interview with another agency; (3) that he recanted his confession to Mr. Long; and (4) that an Eastern Airlines employee would have testified that prior to his departure to the Soviet Union, petitioner told the employee that if he did not return in three weeks, the employee should contact the United States embassy in Bolivia. Petitioner contends that this last statement indicates that he did not intend to injure the security of the United States.

The facts to which petitioner claims these witnesses would have testified are contrary to petitioner's sworn statements at the plea hearing. Under oath, petitioner admitted his guilt and provided a detailed account of his offense. As discussed above, petitioner's sworn statements are conclusive unless he can show compelling reasons for questioning their truth. Petitioner has shown no such compelling reasons. What is compelling is that petitioner asserted his guilt under oath and that during the plea colloquy, the Court established that a sufficient factual basis existed for the plea. The Court found petitioner's confession of

guilt credible, knowing, and voluntary. A person may vacillate numerous times between confession and recantation. Once he has entered a valid guilty plea, however, prior recantations become immaterial. Accordingly, petitioner's motion is DENIED.

An appropriate order shall issue.

---

**5.** Because confessions would show guilt, not innocence, it is unclear from petitioner's pleadings how the loss of the recordings, assuming they existed, would militate in favor of vacating his plea.