UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5953

HAROLD MICHAEL MCTEER,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Chief District Judge.
(CR-95-23)

Argued: September 26, 1996

Decided: November 22, 1996

Before WILKINS, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Peter Alan Katt, LAW OFFICES OF DANIEL L. CRAN-
DALL & ASSOCIATES, P.C., Roanoke, Virginia, for Appellant. Jeb
T. Terrien, Third Year Law Intern, Roanoke, Virginia, for Appellee.
**ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Julie C.
Dudley, Assistant United States Attorney, Roanoke, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Harold Michael McTeer appeals his conviction for eight counts of violating 18 U.S.C. § 876 (1994)**1** by using interstate mail to threaten his former wife, Tina Walton. We affirm.

I.

McTeer and Walton were divorced in May 1980 after a four-year marriage. They had two children; McTeer paid regular child support to Walton while he served in the Army. When McTeer was discharged the support ceased. The Social Services Office Division of Child Support Enforcement ("DCSE") then assisted Walton in obtaining child support from McTeer.

After the divorce, McTeer sent numerous letters to his ex-wife. In 1994, after the DCSE assisted her in obtaining arrearages in child support from McTeer, his letters became even more frequent. In that year alone, his mailings -- some including photographs-- numbered over one hundred and fifty. In a number of these 1994 letters, McTeer expressed hostility toward his ex-wife, presumably due to her attempts to obtain past-due child support. He suggested possible retaliatory steps he might take against her. McTeer also sent a letter to the district manager of the DCSE in Roanoke, Virginia. Walton contacted the police, and both Walton and the DCSE district manager contacted the FBI.

McTeer was arrested in March 1995. A superseding indictment

_____

**1** This statute was amended in 1994. See Act of Sept. 13, 1994, Pub. L. No. 103-322, 108 Stat. 2147, 2150. Although some of McTeer's conduct occurred prior to the enactment of this amendment, the changes in the statute have no bearing on the issues before this Court.

2

charged him with twenty counts of violating 18 U.S.C. § 876. That statute provides in relevant part:

> Whoever knowingly deposits in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service or knowingly causes to be delivered by the Postal Service according to the direction thereon, any communication . . . with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined . . . or imprisoned not more than two years, or both.

18 U.S.C. § 876 (1994) and 18 U.S.C. § 876 (1988).

McTeer's criminal trial commenced in September 1995. After the prosecution rested, McTeer moved for judgment of acquittal on all counts on grounds of insufficiency of evidence. The district court granted McTeer's motion with regard to five counts but allowed the remaining fifteen to go to the jury. The jury acquitted McTeer on seven counts and convicted him on the remaining eight. The court sentenced McTeer to eighteen months in jail for each count, to run concurrently, and three years of supervised release thereafter.

II.

McTeer maintains that the government presented insufficient evidence to convict him of any crime. Specifically, he argues that four letters, providing the basis for counts 11, 14, 15, and 17, are "ambiguous on their face, and therefore do not contain a threat within the meaning of 18 U.S.C. § [876]." He further contends that four mailings with altered photographs were also too ambiguous to meet the sufficiency threshold; these mailings provide the basis for counts 5, 6, 7, and 8.

To determine if the prosecution has met its burden in this direct criminal appeal, we apply a well recognized standard of review, examining whether "there is substantial evidence, taking the view most favorable to the Government," to support the conviction.

3

Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Sherman, 421 F.2d 198, 199 (4th Cir.) (per curiam), cert. denied, 398 U.S. 914 (1970). For statutes that prohibit threatening communication, we have employed an objective, "reasonable person's standard," to determine whether the defendant communicated a true threat. See, e.g., United States v. Darby, 37 F.3d 1059, 1064-65 (4th Cir. 1994) (prosecuting under 18 U.S.C. § 875(c)), cert. denied, 115 S. Ct. 1826 (1995).

A judge should submit the case to the jury if "there is substantial evidence that tends to show beyond a reasonable doubt that an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury . . . ." United States v. Maisonet, 484 F.2d 1356, 1358 (4th Cir. 1973), cert. denied, 415 U.S. 933 (1974); accord United States v. Roberts, 915 F.2d 889, 891 (4th Cir. 1990) (prosecuting under 18 U.S.C. § 115(a)(1)(B)), cert. denied, 498 U.S. 1122 (1991).**2** To prove interstate communication threats, "the government must establish that the defendant intended to transmit the interstate communication and that the communication contained a true threat." Darby, 37 F.3d at 1066 (referring to § 18 U.S.C. 875(c)). Generally what is or is not a true threat is a jury question. Roberts, 915 F.2d at 891 (citing Maisonet, 484 F.2d at 1358).

Maisonet provides guidance here. In Maisonet, a defendant was convicted of sending threatening mail to a judge in violation of § 876. In his letter, he wrote that "if I ever get out of here and nothing happen[s] to me while I am in here, you will never be able to be preju- dice[d] and racist against another Puerto Rican like me." 484 F.2d at 1357. Maisonet argued that he did not mean to physically threaten the judge, but only to seek the judge's removal from office. On appeal, we held: "Whether a letter that is susceptible of more than one mean- ing -- one of which is a threat of physical injury-- constitutes a threat must be determined in the light of the context in which it was written." Id. at 1358. The context in which Maisonet was writing was as follows: the judge he was threatening had sentenced him to prison; he considered that sentence illegal; he felt the judge was motivated by

---

**2** Although Roberts involved a threat to a judge, which was prosecuted under § 115(a)(1)(B) rather than § 876, we apply the same standard under § 876. Roberts, 915 F.2d at 891.

prejudice and racism; and Maisonet sent the threatening letter to the judge's home address. Id. We found that the letter and surrounding facts were sufficient to support the jury's verdict that the communication constituted a threat. Id.

Here, as in Maisonet, we believe that McTeer's letters, when viewed "in the light of the context in which[they were] written," could be interpreted as threats. Id. First, the letters, standing alone, contain alarming passages. The letter dated October 10, 1994 includes language that could be construed as a threat of rape. ("I will [ ] you. I will [ ] you. Because you will let me."). The October 22, 1994 letter states:

> You think you are owed something? Be careful because you could get what you deserve. That thought alone should make you "very afraid." If we had remained married there is little doubt in my mind that one of us would be dead. That is the relationship you wished continued? They say I am"crazy." . . . If we are both "destroyed" in the process and crissy to boot, that's just the way it will be . . . .

In the October 29, 1994 letter, McTeer again includes threatening words: "You have had your `party' at my expense. Are you ready for the pay back?" The November 2, 1994 letter contains this menacing language:

> Tina, I went to JAIL. I could go to prison, Tina. You did it. You caused it. You asked for it. You got it. Where is the "line," deary? Where is the point of no return? When does it become a battle to the death without regard to anything or anyone?

The surrounding facts confirm that a reasonable recipient familiar with the context would view these letters as threats. Among these facts are Walton's efforts to seek child support from McTeer even after McTeer's parental rights over their children were terminated. These efforts obviously upset McTeer. We also consider Walton's testimony regarding McTeer's violent behavior towards her during their marriage. Finally, Walton herself testified that she did indeed interpret the letters as threats. See Roberts , 915 F.2d at 891 (consider-

5

ing the recipient's interpretation of phone calls or letters); Darby, 37 F.3d at 1067 (same). In light of this context, a jury could have concluded that a reasonable recipient of these letters would have viewed them as threats.

McTeer also argues that the photographs sent to Walton were ambiguous. We again reject his argument. The jury had sufficient grounds to find that, in light of the context received, photographs painted red with slash marks cut through them could be reasonably interpreted as threats to physical safety.

We note that the jury carefully considered this case, deliberating for several hours and acquitting McTeer on seven of the fifteen counts. Viewed in the light most favorable to the Government, we can only conclude that the evidence was sufficient to support the jury's verdict of guilty on the eight remaining counts.

III.

McTeer next asserts that the prosecutor's reference to physical abuse during their marriage constituted reversible error requiring a new trial. Specifically, McTeer objects to the prosecutor's statement in argument that, "There was lots of physical abuse during the marriage."

The prosecutor, as much as any other official in the judicial system, has a duty to protect the right to trial by an impartial jury. United States v. Harrison, 716 F.2d 1050, 1051 (4th Cir. 1983), cert. denied, 466 U.S. 972 (1984). With any such allegation, we must determine if a prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)) (internal quotations omitted).

In order to demonstrate prosecutorial misconduct a defendant must show: (1) the prosecutor's remarks were in fact improper, and (2) these remarks "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v.

6

Brockington, 849 F.2d 872, 875 (4th Cir. 1988). See also Holdren v. Legursky, 16 F.3d 57, 62 (4th Cir. 1994) (rejecting contention of prosecutorial misconduct under Brockington test), cert. denied, 115 S. Ct. 106 (1994).

In the instant case, it is not at all clear that the prosecutor's reference in closing argument to physical abuse during the marriage was improper. At trial, the prosecutor queried Walton as to why in 1981 she did not permit McTeer to enter her house until her husband, Chris Walton, returned; Walton responded:

> Walton: When we were married he [McTeer] was violent, and I didn't --
>
> Q: To you? He was violent towards you?
>
> Walton: Yes ma'am.
>
> Q: How so?
>
> Walton: When I moved there in May 7, '76--
>
> Defense Counsel: Your Honor, I'm going to enter an objection at this time as to relevancy, anything going on in the marriage.

The district court sustained the objection, ruling:

> I think this is awful remote, Ms. Campbell, and I think, you know, she said that they had an unhappy marriage, and that's about the extent of it.
>
> I'll sustain the objection.

The prosecutor did not pursue the question as to the nature of the violence. Defense counsel did not request that the reference to McTeer's violence be stricken from the record. Arguably, therefore, evidence of McTeer's violence during the marriage was properly admitted at trial and so could be referred to in closing argument.

7

Assuming, however, that Walton's testimony as to McTeer's violence was improperly admitted into evidence and so the prosecutor's reference to it in closing argument was error, the prosecutor's remark still does not require reversal. To find reversible error, we would have to determine that the remark deprived defendant of a fair trial. Brockington, 849 F.2d 872.

Factors to be considered under this prong of the analysis include:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused;

> (2) whether the remarks were isolated or extensive;

> (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and

> (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

United States v. Morsley, 64 F.3d 907, 913 (1995), cert. denied, 116 S. Ct. 749 (1996) (quoting Harrison, 716 F.2d 1050, 1052). We do not believe that the prosecutor's brief reference to abuse meets any of the criteria set forth above. The remark was isolated. Further, as noted above, the evidence against McTeer was more than sufficient to sustain the conviction. Proof of guilt would not be diminished by removing this comment: McTeer's own letters convicted him.

We therefore reject the claim of prosecutorial misconduct, and find that the district judge did not abuse its discretion in rejecting McTeer's motion for a mistrial.

IV.

McTeer's remaining three arguments are equally meritless.

He first asserts that his counsel was constitutionally ineffective because counsel failed to object to the prosecution's remark regarding McTeer's violent behavior towards his ex-wife. A claim of ineffective

8

assistance of counsel should be raised by motion under 28 U.S.C. § 2255 and not on direct appeal, unless it"conclusively appears" in the trial record that counsel did not provide effective representation. <u>United States v. Fisher</u>, 477 F.2d 300, 302 (4th Cir. 1973). Clearly, the trial record does not even suggest that defense counsel's performance was ineffective.

Next, McTeer contends that the judge erred in not granting him a new trial given the court's refusal to allow him to subpoena court personnel in California and introduce a transcript of a hearing in which such personnel participated. We apply an abuse of discretion standard to this evidentiary ruling. <u>United States v. Gravely</u>, 840 F.2d 1156, 1162 (4th Cir. 1988) ("The standard of review for evidentiary rulings is the narrow abuse of discretion standard."). McTeer fails to demonstrate any abuse of discretion; he does not state how this material would have altered the outcome of the trial. Rather, he merely states that "[t]he relevance of the testimony related to showing the context necessary to determine whether a threat existed." As he provides no support for this statement, we reject it.

Finally, McTeer asserts the district court erred in allowing the testimony of Nellie LeMaster. Again, we are unpersuaded. Assuming that McTeer has preserved this argument for appellate review, the court permitted LeMaster to testify both as to the fact of the receipt of the letters and to her own reaction to the letters when received. This evidence was relevant and its admission was well within the district court's discretion. Accordingly, there was no error in its admission.

V.

For the reasons set forth above, the convictions are

<u>AFFIRMED</u>.

9