**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4196

DAVID HOWARD LAMB,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CR-96-39)

Argued: April 9, 1998

Decided: July 23, 1998

Before WIDENER and LUTTIG, Circuit Judges, and
DOUMAR, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gregory Davis, Assistant Federal Public Defender,
Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr.,
United States Attorney, Greensboro, North Carolina, for Appellee.
**ON BRIEF:** John Stuart Bruce, Acting Federal Public Defender,
Greensboro, North Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

David Howard Lamb appeals his convictions and sentences arising out of a two-count indictment for threatening a federal agent (Count I), and possession of a firearm by a person having been committed to a mental institution (Count II). For the reasons stated herein, we affirm.

I.

Lamb, who has a long history of mental instability (including multiple instances of involuntary commitment) and dangerous, threatening behavior, left the following message in an angry, menacing tone on the answering machine of Dan Wozniak, the agent in charge of the FBI's office in Greensboro, North Carolina:

> This message is for Special Agent Daniel Wozniak. It is from David Howard Lamb. He's got my number. The message is [pause] those who cannot or will not do their duty, sooner or later, are replaced by those who can and will do the job for them. J.I. Smith will not be the sheriff of Caswell County for ever and ever and ever and you, Daniel Wozniak, will not live happily ever after for looking the other way on this one. Whether I live or not, trouble is coming. The FBI wants to threaten my life, kill me, G** d*** you, the killing will only just have begun, mother f*****, and if you don't like this call, G** d*** you, come out here and try [unintelligible] f****** army, I've got one.

J.A. at 417. Minutes later, Lamb left a message for Agent Tom Childry at the Greensboro office of the State Bureau of Investigation ("SBI"):

2

This message is for Tom Childry. It's from David Lamb. Tom, [pause] some people are real upset about Dan Wozniak's absolute refusal to do anything to J.I. Smith, whatsoever. I think he's got some real bad trouble coming. I'm not going to cuss you out, Tom. I'm trying to keep people off your a\*\*. I don't particularly like you, but I don't think the ball is in your hands in this one. I think that this is a call you were not allowed to make and you might woulda took that badge offa J.I. Smith, but it wasn't up to [background noise] you, it was up to somebody higher than you. And now, guess what? It's up to somebody higher than them. I'm gonna tell ya something, Tom, if something happens to Dan Wozniak and it does fall to you, I think you need to take another look at really seriously charging J.I. Smith with something [pause] `cause this ain't gonna go on for ever.

J.A. at 511. Both messages apparently referred to complaints previously made by Lamb to state and federal law enforcement agencies about the alleged involvement in illegal activities of J.I. Smith, the Sheriff of Caswell County, North Carolina.

Wozniak interpreted Lamb's message as a threat to his life, J.A. at 36, and accordingly initiated contact with other law enforcement agencies, including the SBI, in an attempt to assess the threat. Wozniak learned of Lamb's call to Childry, and other information about Lamb. The more information Wozniak gathered, the more concerned he became. J.A. at 37. A federal warrant was issued for Lamb's arrest, and, when Lamb was arrested, a search of the passenger area of his truck revealed a .380 caliber pistol -- loaded with a full magazine and a round in the chamber -- as well as two additional magazines of ammunition, various knives and cutters, and a large steel needle. J.A. at 66-69, 71-72.

Thereafter, Lamb was indicted and convicted for violating 18 U.S.C. § 115 (threatening to assault a federal officer with the intent to retaliate against him on account of the performance of his official duties) (Count I), and 18 U.S.C. § 922(g)(4) (possessing in commerce and affecting commerce a firearm following commitment to a mental institution) (Count II). The district court sentenced Lamb to 60 months on Count I, to run concurrently with 106 months on Count II,

3

with three years supervised release on each count. Lamb appeals his convictions and sentences.

II.

Lamb raises three challenges to his convictions. First, he contends that his message to Wozniak cannot reasonably be construed as a threat, and that the district court therefore erred in denying his motion for a judgment of acquittal on Count I. Where a communication is susceptible of more than one meaning -- one of which constitutes a threat of physical injury -- a court should submit the case to a jury, regardless of the subjective intent of the speaker, if there is evidence from which a jury could find beyond a reasonable doubt that a reasonable recipient familiar with the context of the message would interpret it as a threat of injury. United States v. Darby, 37 F.3d 1059, 1066 (4th Cir. 1994); United States v. Roberts, 915 F.2d 889, 890-91 (4th Cir. 1990); United States v. Maisonet , 484 F.2d 1356, 1358 (4th Cir. 1974). Because we find that Lamb's message, viewed in context, amply satisfies this standard, we hold that the district court did not err in denying Lamb's motion for a directed verdict on Count I.

Second, Lamb maintains that the district court erred in refusing to submit an insanity instruction to the jury as to Count II. The district court correctly reasoned that, to establish mens rea for the violation of section 922(g), the government needed to prove only that Lamb knew he was in possession of a firearm, and not that he knew that such possession was wrongful or unlawful. See J.A. 406-10. This reading of the statute clearly follows from our decision in United States v. Langley, 62 F.3d 602, 604-06 (4th Cir. 1995) (en banc) (so interpreting analogous prohibition of firearm possession by a convicted felon), and Lamb essentially concedes the correctness of this interpretation, see Appellant's Br. at 25. Because even the defendant's own expert witness testified that Lamb's mental disorder did not prevent him from knowing that he had a firearm, J.A. at 280; accord J.A. at 401-02 (government's expert), we hold that no insanity instruction was warranted as to this count.

Third, Lamb argues that the district court abused its discretion in denying his motion for a mistrial on the grounds of prosecutorial mis-

4

conduct.* The alleged prosecutorial misconduct consisted of the prosecutor's reference, during cross-examination of Lamb's expert witness, that the witness had psychologically evaluated Michael Hayes, a notorious North Carolina murderer, in connection with the latter's criminal defense. See J.A. at 311. The district court immediately sustained Lamb's objection to this line of questioning, id., and, immediately after a sidebar, gave the jury an emphatic curative instruction, including the following:

> The last question involved the recognition of an individual's name, and I sustained the objection to it. So, you will not even speculate what the answer would have been. Do not give that objection or the question any further consideration. Do not speculate as to what the answer would have been. That has nothing to do with this case at this point.

See J.A. at 313. Even assuming the reference to Hayes constituted misconduct, Lamb concedes that such misconduct was isolated. Appellant's Br. at 32; cf. United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1984) (whether improper prosecutorial remarks are prejudicial depends, in part, on whether the remarks were isolated or extensive). Especially in light of the immediate and emphatic response of the district court, we hold that the prosecutor's isolated reference to Hayes did not so prejudice Lamb's substantial rights as to deprive him of a fair trial. See United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995).

III.

Lamb also argues that the district court erred in calculating his sentencing range, and abused its discretion in departing upward from that range. As for the first point, Lamb argues that the district court erred in (1) grouping the two counts together under U.S.S.G. §§ 3D1.2(b), 3D1.2(c), or both, (2) applying a four-level enhancement under § 2K2.1(b)(5) for using or possessing a firearm or ammunition in con-

_____

*Lamb also contends that the district court abused its discretion in denying his motion for a mistrial on the grounds that the district court failed to give an insanity instruction as to Count II. We reject this contention for the reasons stated above.

5

nection with another felony offense, and (3) applying a three-level enhancement under § 3A1.2(a) because the victim was a government officer and the offense was motivated by such status.

We hold that the district court did not err in calculating Lamb's sentencing range. Grouping of the two counts was proper under § 3D1.2(c) because possession of the firearm and ammunition served to evidence Lamb's intent to carry out his threat, a specific offense characteristic of Count I under § 2A6.1(b)(1). Alternatively, grouping was proper under § 3D1.2(b), because the district court could reasonably have found that the two counts involved the same victim and were connected by the common criminal objective of harming or killing Wozniak. Cf. United States v. Morrow, 925 F.2d 779, 782. The existence of such an objective could be readily inferred from Lamb's threatening phone calls to Wozniak and the SBI, and also by a letter written by Lamb following his arrest "bragging to[his] fellow inmates, to the guards and especially to the FBI, that [he] . . . was actively involved in the conspiracy to kill FBI agent Dan Wozniak . . . ." J.A. at 368. And the district court's enhancements under § 2K2.1(b)(5) and § 3A1.2(a) also appear permissible for the same reasons. Even if the court's determination and enhancement of the offense level were erroneous, however, such error was assuredly harmless. For, as we discuss below, the district court did not abuse its discretion in departing upward in sentencing Lamb, and that court made clear that it would have departed upward to the ultimate sentence imposed, regardless of the offense level from which it started. See J.A. at 718-19.

We also hold that the district court did not abuse its discretion in departing upward. Prior to his arrest, Lamb had engaged in numerous violent and threatening incidents, which are recounted in the sealed volume of the joint appendix. See J.A. at 514-16, 518, 520, 603-04, 666, 671-72, 679-83. Despite all of these incidents, and because he is clearly mentally unstable, Lamb had frequently been institutionalized, but had, prior to this case, rarely been charged with, and only once been convicted of, serious criminal offenses (and even on that one occasion he received only a suspended sentence, J.A. at 514). Accordingly, he fell within a very low criminal history category -- category I -- that clearly did not reflect the seriousness of his past conduct or the likelihood that he would commit future crimes. Departure upward

6

is clearly permissible in such circumstances. See § 4A1.3 (authorizing departure in such circumstances); § 4A1.3(e) (expressly authorizing consideration of prior similar criminal conduct not resulting in a conviction); § 4A1.3(5) (policy statement) (authorizing consideration of occasions when the defendant received an extremely lenient sentence for a serious offense); § 5K2.0 (court may depart upward for special circumstances not otherwise provided for in the guidelines). And the district court properly engaged in a level-by-level analysis of each criminal history category as it departed upward in sentencing Lamb. Compare United States v. Cash, 983 F.2d 558, 561 (4th Cir. 1992), with J.A. at 702-03. Accordingly, we cannot find an abuse of discretion.

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

7