**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DWIGHT L. ARMEL, a/k/a Dwight
Loring Armel,

*Defendant-Appellant.*

No. 08-4700

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(3:07-cr-00292-RLW-1)

Argued: September 24, 2009

Decided: October 19, 2009

Before MOTZ and GREGORY, Circuit Judges,
and Damon J. KEITH, Senior Circuit Judge of the United
States Court of Appeals for the Sixth Circuit,
sitting by designation.

Affirmed in part and vacated and remanded in part by pub-
lished opinion. Judge Motz wrote the opinion, in which Judge
Gregory and Senior Judge Keith joined.

**COUNSEL**

**ARGUED**: Mary Elizabeth Maguire, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Stephen David Schiller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellant. Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

After a bench trial, the district court found Dwight L. Armel guilty of threatening federal officials, sentenced him to thirty months in prison, and imposed a three-year term of supervised release with several unusual special conditions. On appeal, Armel challenges his conviction and several of the special conditions.[1] We affirm the conviction but vacate the special conditions and remand for resentencing.

I.

On the morning of July 18, 2007, Armel made three phone calls to the FBI's resident agency office in Fredericksburg, Virginia. The office's secretary answered the first call, during which Armel claimed that the FBI previously tried to kill him and now owed him money. The secretary requested that Armel hold for a call transfer; when he refused to do so, she hung up the phone. Minutes later, Armel called again and left a message complaining that "that bitch just hung up on" him

---

[1]Because the Bureau of Prisons released Armel from prison during the pendency of this appeal, he concedes that any challenge to his term of imprisonment is now moot.

and warning that the secretary had "no business" hanging up on him or working for the FBI. He stated that he was in Fredericksburg and threatened, "[I]f you don't pay me within three days, none of you, male or female, are gonna be able to have sex again. . . . [Y]ou're gonna lose you're [sic] genitalia." Armel asserted that "God promised me that he would curse you." He went on: "You come and try to pull on me . . . [y]ou will die. Not by my hand, by the hand of God. Or maybe by my hand, but it will be self-defense. . . . Pay Me My Wages . . . Or Else!" Armel warned the agents to "[g]et it straight or fucking die!"

The next day, after discovering that Armel had a history of harassment and threats, the FBI coordinated with local officials and arrested him. Armel acknowledged that he understood the reason for his arrest and eventually apologized. A grand jury indicted Armel pursuant to 18 U.S.C. § 115(a)(1)(B) (2006), which prohibits

> threat[s] to assault, kidnap, or murder, a . . . Federal law enforcement officer . . . with intent to impede, intimidate, or interfere with such . . . law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such . . . law enforcement officer on account of the performance of official duties.

After a short bench trial, the district court found Armel guilty, concluding that "the tone and content of the taped threatening communication establishes that threats were made."

The district court sentenced Armel to a substantially above-guideline prison term. The court also imposed three years of supervised release, including what the court characterized as "very rigid" special conditions. In addition to the directive that Armel receive psychiatric treatment—which he does not challenge—the district court also ordered that Armel not possess pornography, not enter places where pornography could

be obtained, not have contact with children, and submit to invasive sex offender tests.

The district court offered this explanation of the sentence:

> [T]he sentence imposed is fair and reasonable, although not within the advisory guideline range, which in the exercise of judicial discretion was found not to be consistent with the requirements of title 18 USC 3553(a). Specifically, The Court is imposing the sentence pursuant to title 18 [U.S.C. § 3553(a)(2)(C), (D)] based on the characteristics of the defendant, the need to protect the public from further crimes, and especially to provide the defendant with needed medical and psychiatric care.

The court added that its sentencing decisions aimed to "throw [Armel] a life raft and . . . salvage [him]."

## II.

Armel initially challenges his conviction on sufficiency grounds. "In assessing the sufficiency of the evidence presented in a bench trial, we must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." *Elliott v. United States*, 332 F.3d 753, 760-61 (4th Cir. 2003). "Substantial evidence" means "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

Armel offers two arguments in support of his sufficiency contention. First, he maintains that his statements did not constitute a "true threat."[2] This argument fails. Statements consti-

---

[2]In interpreting a statute similar to § 115, the Supreme Court has concluded that, in order to qualify as constitutionally unprotected criminal

tute a "true threat" if "an ordinary reasonable recipient who is familiar with the[ir] context . . . would interpret [those statements] as a threat of injury." *United States v. Roberts*, 915 F.2d 889, 891 (4th Cir. 1990) (internal quotation marks omitted) (quoting *United States v. Maisonet*, 484 F.2d 1356, 1358 (4th Cir. 1973)). Armel argues that "his statements were ridiculous, inherently unthreatening, and conditional," but a defendant's inability to carry out specific threats does not render them unthreatening or harmless. *See Roberts*, 915 F.2d at 890; *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) ("In determining whether a statement amounts to an unprotected threat, there is no requirement that . . . the speaker was capable of carrying out the purported threat of violence."). An ordinary listener certainly could conclude—as the trial court did—that the statements, which threatened loss of genitalia and death, and indicated Armel's presence in Fredericksburg, were a genuine threat of injury. *See Roberts*, 915 F.2d at 891 (noting that finders of fact, in that case jurors, "certainly consist of the requisite reasonable people" in the true threat analysis). Viewing the evidence in the light most favorable to the Government, the fact that Armel invoked God and made statements that some might consider outrageous does not compel a contrary result.

Alternatively, Armel contends that we must vacate his conviction because § 115 does not criminalize general threats against law enforcement officers. That argument also fails. Although Armel did not *name* potential victims, he did direct his threats to specific persons, namely the FBI agents and support staff at the relatively small Fredericksburg office. The Supreme Court has explained that "[t]rue threats encompass

speech, a threatening statement must amount to a "true threat" rather than mere political hyperbole or idle chatter. *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam). This court and others have similarly read such a requirement into § 115. *See, e.g.*, *United States v. Roberts*, 915 F.2d 889, 890-91 (4th Cir. 1990); *United States v. Martin*, 163 F.3d 1212, 1216 (10th Cir. 1998).

those statements . . . [directed at] a particular individual or *group of individuals*." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added) (internal quotation marks omitted). We refuse to add a "particularized victim" element to § 115 when Congress has not done so, and when doing so would result in holding harmless a defendant who threatens to maim or kill *several* law enforcement officers rather than just *one*.[3]

For these reasons, sufficient evidence supports Armel's conviction.

## III.

Armel also challenges certain special conditions the district court imposed in connection with his three-year term of supervised release—prohibitions against possession of pornography, entry into establishments where pornography is available, and contact with children; as well as directions that he undergo invasive sex-offender tests.

"District courts have broad latitude to impose conditions on supervised release," and so we review such conditions only for abuse of discretion. *United States v. Dotson*, 324 F.3d 256, 259, 260 (4th Cir. 2003). The sentencing court may impose any condition "reasonably related" to the factors referred to in 18 U.S.C. § 3583(d)(1), which include "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); "protect[ing] the public from further crimes," *id.* § 3553(a)(2)(C); and "provid[ing] the defendant with needed . . . medical care[ ] or other correctional treatment," *id.* § 3553(a)(2)(D). But special conditions

---

[3]Of course, we do not hold that the number of purported victims is irrelevant in interpreting § 115. The number of victims threatened may indeed be relevant in determining whether a reasonable person would interpret the communication as a real threat of injury. But, when a reasonable listener would interpret the communication as a threat, we decline to read into the statute an additional requirement that the threat be made against a specific official rather than a group of officials.

must "involve[ ] no greater deprivation of liberty than is reasonably necessary" to achieve the goals enumerated in § 3553(a). 18 U.S.C. § 3583(d)(2). "Although the discretion thus conferred is broad," an appellate court "will carefully scrutinize unusual and severe conditions." *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002) (internal quotation marks omitted).

"The [district] court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence . . . ." 18 U.S.C. § 3553(c). Accordingly, the court must explain the rationale for the special conditions it imposes. *See United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999) ("[C]ourts of appeals have consistently required district courts to set forth factual findings to justify special . . . conditions."); *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001).

While the district court in this case accurately described the special conditions as "very rigid," it offered no explanation as to their necessity in Armel's case.[4] *See* 18 U.S.C. § 3553(c). Accordingly, we have no basis for determining whether they are reasonably related to the factors referred to in 18 U.S.C. § 3583(d)(1) and "involve[ ] no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). *See Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007) (noting that a key purpose of the explanation requirement is to "allow for meaningful appellate review"); *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009).

Imposition of the pornography prohibitions seems particularly inexplicable. Our sister circuits have vacated such conditions even in cases involving conviction for a sex offense. *See United States v. Perazza-Mercado*, 553 F.3d 65, 76 (1st Cir.

---

[4]We note that the Government did not request imposition of any of the challenged special conditions and did not defend the pornography conditions even on appeal.

2009) (vacating a special condition prohibiting the possession of pornography, imposed on a defendant convicted of sexual contact with a minor, because the sentencing court failed to explain the "relationship between the defendant's possession and use of adult pornography and the likelihood that he would engage in sexual misconduct involving young girls"); *United States v. Loy*, 191 F.3d 360, 371 (3d Cir. 1999) (remanding for an explanation of a similar special condition when the defendant was convicted of knowingly receiving child pornography). Surely, given that Armel's underlying conviction was *not* sex-related, our need for an explanation for the special conditions is all the more pressing.

"[A]ppellate courts must have sufficient information about the justifications offered for the sentence imposed in order to conduct a meaningful review." *United States v. Henry*, 545 F.3d 367, 386 (6th Cir. 2008). Because the record here does not contain this essential information, we cannot determine the reasonableness of the challenged special conditions and must therefore vacate those conditions and remand for resentencing.

## IV.

The district court admirably attempted to render a sentence that would protect the public and help Armel rehabilitate. However, the court offered scant explanation for any of the challenged special conditions and *no* explanation for the pornography conditions. Accordingly, while we affirm Armel's conviction, we must vacate the special conditions and remand for resentencing.

*AFFIRMED IN PART AND*
*VACATED AND REMANDED IN PART*