FLOYD, Circuit Judge,
concurring in part and dissenting in part:
Although we have traditionally adhered to a purely objective test for determining when a communication constitutes a true threat, the Supreme Court, in my opinion, imposed a specific intent requirement in Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). This superseding Supreme Court decision requires us to depart from our precedent and include a subjective component in our true-threats analysis. Since Black, however, we have continued to utilize only an objective test. See United States v. Armel, 585 F.3d 182, 185 (4th Cir.2009). But in doing so we have not addressed whether Black requires us to revisit our true-threats test. So the issue remains open. Because I think Black mandates that the speaker must specifically intend to threaten the victim for a communication to constitute a true threat, I respectfully dissent in part from the majority opinion.
I.
William White challenges, among other things, his convictions under Counts 1 and 5, which charged him with violating 18 U.S.C. § 875(c). Section 875(c) proscribes “transmit[ting] in interstate ... commerce any communication containing any threat to kidnap any person or any threat to injure the person of another.” Id.
White contends that the district court erred in its jury instruction regarding what the government must prove to obtain a conviction under this statute.[1] Specifi *519 cally, he contends the district court made an error of law when it charged the jury that, for the communications at issue to constitute true threats, the government did not have to prove that he subjectively intended for the victims to understand them as threats, only that a reasonable recipient would deem- them to be threats.
Our review of a district court’s jury instructions is for abuse of discretion. United States v. Lighty, 616 F.3d 321, 366 (4th Cir.2010). “By definition, a court ‘abuses its discretion when it makes an error of law.’ ” United States v. Ebersole, 411 F.3d 517, 526-27 (4th Cir.2005) (quoting United States v. Prince-Oyibo, 320 F.3d 494, 497 (4th Cir.2003)). For the following reasons, I think the district court made an error of law when it instructed the jury that the government did not need to prove that White specifically intended to threaten the victims for the communications at issue to constitute true threats.
II.
We must interpret statutes that criminalize pure speech consistently with the strictures of the First Amendment. Watts v. United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam). As § 875(c) criminalizes threatening speech, we must interpret it in a manner that distinguishes “[w]hat is a threat ... from what is constitutionally protected speech.” Id.
A.
We have previously outlined what the government must prove to establish a violation of § 875(c). See United States v. Darby, 37 F.3d 1059, 1066 (4th Cir.1994). In interpreting § 875(c), we held that it creates a general-intent crime, requiring proof of only a “general intent to threaten.” Id. We rejected the argument that the statute imposes a specific intent requirement. Id. at 1062-66. We provided that “to establish a violation of [§ ] 875(c), the government must establish that the defendant intended to transmit the interstate communication and that the communication contained a true threat.” Id. at 1066.
“True threats” constitute one of the “well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem.” Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); see also Black, 538 U.S. at 358-59, 123 S.Ct. 1536 (recognizing that true threats constitute one of the proscribable classes of speech described in Chaplinsky). Such speech is “of such slight social value as a step to truth that any benefit that may be derived from [it] is clearly outweighed by the social interest in order and morality.” Id. at 572, 62 S.Ct. 766. More specifically, our interest in “protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur” outweighs whatever negligible social value that speech constituting true threats may promote. R.A.V. v. City of St. Paul, 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). For that reason, true threats fall “outside the First Amendment.” Id. Thus, our requirement that to obtain a conviction under § 875(c) the communication must contain a true threat is of consti *520 tutional significance because the State can proscribe such speech without violating the First Amendment. See Black, 538 U.S. at 359, 123 S.Ct. 1536.
We have traditionally employed an objective test for determining whether a communication constitutes a true threat. Under this test, if a reasonable recipient familiar with the context of the communication would understand it to be a threat, it is a true threat. See Darby, 37 F.3d at 1066; United States v. Roberts, 915 F.2d 889, 890-91 (4th Cir.1990); United States v. Maisonet, 484 F.2d 1356, 1358 (4th Cir.1973). This test is purely objective, as we have disavowed any requirement that the government “prove ... the defendant subjectively intended for the recipient to understand the communication as a threat.” Darby, 37 F.3d at 1066.
Our court’s precedent is, therefore, abundantly clear that neither § 875(c) nor the First Amendment imposes a requirement that the government prove the speaker specifically intended to threaten the victim. This precedent, of course, binds us unless it has been overruled by a superseding contrary Supreme Court decision. See United States v. Rivers, 595 F.3d 558, 564 n. 3 (4th Cir.2010); Etheridge v. Norfolk & W. Ry. Co., 9 F.3d 1087, 1090 (4th Cir.1993). As I shall explain, I think the Supreme Court has issued a superseding contrary decision that requires us to depart from this precedent to the extent it does not require the government to prove a specific intent to threaten for a communication to constitute a true threat.
B.
The Supreme Court’s 2003 decision in Virginia v. Black is a superseding contrary decision that makes our purely objective approach to ascertaining true threats no longer tenable.
At issue in Black were three defendants’ convictions under a Virginia statute that criminalized cross burning committed “with the intent of intimidating.” 538 U.S. at 348, 123 S.Ct. 1536 (internal quotation marks omitted). The statute included a provision stating that the act of burning a cross constituted, on its own, “prima facie evidence of an intent to intimidate.” Id. (internal quotation marks omitted). Accordingly, one of the defendants had been convicted pursuant to a jury instruction that charged, “[T]he burning of a cross by itself is sufficient evidence from which you may infer the required intent.” Id. at 349 (internal quotation marks omitted). With respect to the other two defendants, one pleaded guilty and the other’s conviction was obtained without the jury being instructed as to the prima facie evidence provision. Id. at 350-51, 123 S.Ct. 1536.
After recounting the history and various purposes of cross burning as associated with the Ku Klux Klan, the Court explained why true threats do not garner First Amendment protections and may be proscribed. Id. at 359-60, 123 S.Ct. 1536. It defined true threats as follows: “ ‘True threats’ encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.” Id. at 359, 123 S.Ct. 1536. The Court clarified that the speaker does not need to intend to carry out the threat, recognizing, as it had previously, that the State may proscribe true threats to “protect! ] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur.” Id. at 359-60, 123 S.Ct. 1536 (quoting R.A.V., 505 U.S. at 388, 112 S.Ct. 2538) (internal quotation marks omitted). The Court further explained that “[¡Intimidation in the consti *521 tutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.” Id. at 360, 123 S.Ct. 1536.
The Court held that “Virginia’s statute does not run afoul of the First Amendment insofar as it bans cross burning with intent to intimidate.” Id. at 362, 123 S.Ct. 1536. Drawing on its decision in R.A.V. v. City of St. Paul, in which it noted that content-based discrimination is permissible “[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable,” 505 U.S. at 388, 112 S.Ct. 2538, the Court reasoned that “[t]he First Amendment permits Virginia to outlaw cross burnings done with the intent to intimidate because burning a cross is a particularly virulent form of intimidation,” 538 U.S. at 363, 123 S.Ct. 1536. This emphasis on intent is not mere surplusage. Intimidation is constitutionally proscribable as a true threat, the Court had explained, only when the speaker makes the communication “with the intent of placing the victim in fear of bodily harm or death.” Id. at 360, 123 S.Ct. 1536. Accordingly, for a statute proscribing intimidation to fall within R.A.V.’s exception for permissible content-based discrimination, it would need to require proof of a specific intent to make the victim fearful, not just evidence that the cross burning had that effect.
Although the majority then splintered on the constitutionality of Virginia’s prima facie evidence provision, a majority of the Justices agreed that proof of an intent to intimidate was constitutionally necessary for the Commonwealth to proscribe cross burning. A plurality[2] argued that the prima facie evidence provision was facially unconstitutional because it “strip[ped] away the very reason why a State may ban cross burning with the intent to intimidate” by obviating the Commonwealth’s requirement to prove an intent to intimidate. Id. at 365, 123 S.Ct. 1536 (plurality opinion). Recognizing that an individual can burn a cross with the intent to intimidate or to make an ideological statement, the plurality asserted that the prima facie evidence provision chilled core political speech by making it possible for Virginia to charge and convict someone who burned a cross with the intent to make an ideological statement rather than to intimidate. Id.
Justice Scalia, despite disagreeing with the plurality that the prima facie evidence provision was facially unconstitutional, agreed that one of the defendant’s convictions had to be vacated because the jury was instructed that it could infer an intent to intimidate from the act of cross burning alone. Id. at 379-80, 123 S.Ct. 1536 (Scalia, J., concurring in part, concurring in the judgment in part, dissenting in part). Finally, Justice Souter, joined by Justice Kennedy and Justice Ginsburg, argued that the entire Virginia statute, not just the prima facie evidence provision, constituted impermissible content-based discrimination and should be struck down. Id. at 380-81, 387, 123 S.Ct. 1536 (Souter, J., concurring in the judgment in part, dissenting in part). Like the plurality, however, he asserted that people can burn crosses with the proscribable intent to intimidate or simply with the constitutionally protected intent to make an ideological *522 statement, and that evidence of circumstances apart from the burning of the cross must be considered to differentiate between the two purposes. Id. at 385-86, 123 S.Ct. 1536. Significantly, despite the fractured nature of the decision, a majority of the Justices viewed proof of an intent to intimidate as constitutionally necessary to convict an individual of cross burning without violating the First Amendment.
C.
Although in Black the Court did not explicitly indicate that it was abrogating the purely objective standard employed by most courts — including ours — for determining whether a communication constitutes a true threat, I think its reasoning has that effect. Two aspects of the decision suggest that the Court viewed true threats as requiring proof of a specific intent to threaten. See United States v. Cassel, 408 F.3d 622, 631-32 (9th Cir.2005). First, its discussion of what constitutes a constitutionally proscribable true threat contains a specific intent to threaten requirement. See id. at 631, 408 F.3d 622. Second, a majority of the Justices viewed evidence of an intent to intimidate as necessary for a defendant to be convicted for cross burning consistently with the First Amendment. Id. at 632, 408 F.3d 622.
The Court’s discussion of true threats quite clearly indicates that proof of a specific intent to threaten is necessary for a communication to qualify as a true threat. Recall that it defined true threats as “those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.” Black, 538 U.S. at 359, 123 S.Ct. 1536 (majority opinion). As the Ninth Circuit has recognized, “[a] natural reading of this language embraces not only the requirement that the communication itself be intentional, but also the requirement that the speaker intend for his language to threaten the victim.” Cassel, 408 F.3d at 631. Moreover, the Court’s statement immediately following its definition of true threats — that the speaker does not have to intend to carry out the threat — further demonstrates that it viewed true threats as containing a specific-intent requirement. See Black, 538 U.S. at 359-60, 123 S.Ct. 1536. The Court, having defined true threats in a manner that incorporated a specific-intent-to-threaten requirement, clarified that the specific-intent requirement does not necessitate proof of intent to carry out the threat.
To the extent that the Court’s definition is susceptible to more than one interpretation,[3] however, the Court’s subsequent description of what constitutes constitutionally proscribable intimidation — a type of true threat — clarifies that true threats include a specific intent to threaten requirement. The Court defined constitutionally proscribable intimidation as speech through which the “speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.” Id. at 360, 123 S.Ct. 1536 (emphasis added). I cannot understand why intimidation would require a specific intent to threaten before being constitutionally proscribable, but all true threats would not. Therefore, in my mind, the Court’s discussion of what constitutes a proscribable true threat includes a requirement that the speaker specifically intend to threaten the victim.
This interpretation is further underscored by the fact that a majority of the *523 Justices indicated proof of an intent to intimidate was necessary for the defendants to be convicted in a manner consistent with the First Amendment. Cassel, 408 F.3d at 632. This, in turn, demonstrates that they viewed “intent to threaten as the sine qua non of a constitutionally punishable threat.” Id. at 631. If the First Amendment did not impose a specific intent requirement, “Virginia’s statutory presumption was superfluous to the requirements of the Constitution, and thus incapable of being unconstitutional in the way that the majority understood it.” Frederick Schauer, Intentions, Conventions, and the First Amendment: The Case of Cross-Burning, 2003 Sup.Ct. Rev. 197, 217. In other words, for the statutory provision and convictions to be unconstitutional in the way that a majority of the Justices understood them to be, the First Amendment must embody a specific-intent-to-threaten requirement. Accordingly, the constitutional deficiencies that the Justices identified in Black further demonstrate that the First Amendment imposes a specific-intent-to-threaten requirement.
I would therefore join those courts and scholars that have addressed Black and determined that it requires the government to prove that the speaker specifically intended to threaten for the communication at issue to constitute a true threat. See United States v. Parr, 545 F.3d 491, 500 (7th Cir.2008) (dictum); Cassel, 408 F.3d at 633; O'Brien v. Borowski, 461 Mass. 415, 424-26, 961 N.E.2d 547 (Mass.2012); Roger C. Hartley, Cross Burning-Hate Speech as Free Speech: A Comment on Virginia v. Black, 54 Cath. U.L.Rev. 1, 31, 33 (2004); Schauer, supra, at 217-18, Crane, supra, at 1269.
D.
Since Black, we, like the majority of circuits, have continued to employ a purely objective test for determining whether a communication constitutes a true threat. See, e.g., United States v. Mabie, 663 F.3d 322, 333 (8th Cir.2011); United States v. Xiang Li, 381 Fed.Appx. 38, 39 (2d Cir.2010); Armel, 585 F.3d at 185; United States v. D'Amario, 330 Fed.Appx. 409, 413-14 (3d Cir.2009); United States v. Hankins, 195 Fed.Appx. 295, 301 (6th Cir.2006); United States v. Stewart, 411 F.3d 825, 828 (7th Cir.2005); Porter v. Ascension Parish Sch. Bd., 393 F.3d 608, 616-17 (5th Cir.2004); United States v. Alaboud, 347 F.3d 1293, 1296-97 (11th Cir.2003); United States v. Nishnianidze, 342 F.3d 6, 16 (1st Cir.2003). But see United States v. Bagdasarian, 652 F.3d 1113, 1117 (9th Cir.2011) (“Because the true threat requirement is imposed by the Constitution, the subjective test set forth in Black must be read into all threat statutes that criminalize pure speech.”); Parr, 545 F.3d at 500 (“It is more likely, however, that an entirely objective definition is no longer tenable.”). But like most of these circuits, we have yet to address whether Black imposes a specific intent requirement on our true-threats analysis. See Armel, 585 F.3d at 185. But see Mabie, 663 F.3d at 332-33 (addressing Black but nevertheless holding that “[t]he government need not prove that [the defendant] had a subjective intent to intimidate or threaten ... to establish that his communications constituted true threats”). And because we have never squarely addressed the issue but, at most, have assumed it, we remain free to address its merits. See Brecht v. Abrahamson, 507 U.S. 619, 631, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (“[S]ince we have never squarely addressed the issue, and have at most assumed [it], we are free to address the issue on the merits.”); Ark. Game & Fish Comm’n v. United States, 637 F.3d 1366, 1378 n. 7 (Fed.Cir.2011) (“We have consistently held that panel authority that does not address an issue is *524 not binding as to the unaddressed issue.”); Passmore v. Astrue, 533 F.3d 658, 660 (8th Cir.2008) (“[W]hen an issue is not squarely addressed in prior case law, we are not bound by precedent through stare decisis.”); Fernandez v. Keisler, 502 F.3d 337, 343 n. 2 (4th Cir.2007) (“We are bound by holdings, not unwritten assumptions.”). Our precedent, therefore, does not preclude us from reaching this issue.
In light of Black, we should depart from Darby’s holding and impose a requirement that for a communication to constitute a true threat the speaker must have specifically intended to threaten the victim. To prove a true threat, the government would therefore need to satisfy a two-pronged test. See Bagdasarian, 652 F.3d at 1117; Parr, 545 F.3d at 500. First, the government would need to prove that “a reasonable recipient familiar with the context of the communication” would interpret the communication as a threat. Darby, 37 F.3d at 1066. Second, the government would have to demonstrate that the speaker intended for the communication to threaten the victim. This prong would require proof that “[t]he threat [was] made ‘with the intent of placing the victim in fear of bodily harm or death.’” United States v. Magleby, 420 F.3d 1136, 1139 (10th Cir.2005) (quoting Black, 538 U.S. at 360, 123 S.Ct. 1536).
As compared to a purely objective test, imposing a specific intent to threaten requirement strikes a more appropriate balance between the ideals that the First Amendment serves and the interest in protecting victims from the harms caused by threatening speech. See Crane, supra, at 1271-72. People often use violent phrases or symbols to convey ideas or displeasure, not just to threaten. They employ such speech for its emotive appeal, not just its cognitive force. Cf. Cohen v. California, 403 U.S. 15, 26, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Violent and extreme rhetoric are no strangers to our political discourse. See Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists (Planned Parenthood I), 244 F.3d 1007, 1014 (9th Cir.2001) (“Extreme rhetoric and violent action have marked many political movements in American history .... [M]uch of what was said even by nonviolent participants in these movements acquired a tinge of menace.”), aff'd in part, vacated and remanded in part, 290 F.3d 1058 (9th Cir.2002) (en banc). Such rhetoric can constitute core political speech, even when it invokes fear and creates apprehension.
The purely objective approach allows speakers to be convicted for negligently making a threatening statement — that is, for making a statement the speaker did not intend to be threatening, but that a reasonable person would perceive as such. This potential chills core political speech. See Rogers v. United States, 422 U.S. 35, 47-48, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975) (Marshall, J., concurring) (“[T]he objective interpretation embodies a negligence standard, charging the defendant with responsibility for the effect of his statements on his listeners.”); Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists (Planned Parenthood II), 290 F.3d 1058, 1108 (9th Cir.2002) (en banc) (Berzon, J., dissenting) (“[A] purely objective standard for judging the protection accorded such speech would chill speakers from engaging in facially protected public protest speech that some might think, in context, will be understood as a true threat although not intended as such.”); Jennifer E. Rothman, Freedom of Speech and True Threats, 25 Harv. J.L. & Pub. Pol’y 283, 316 (2001) (“Punishing merely negligent speech will chill legitimate speech by forcing speakers to steer clear of any questionable speech.”); Crane, supra, at 1273 (“Put simply, an objective *525 standard chills speech.”). “Unsure of whether their rough and tumble protected speech would be interpreted by a reasonable person as a threat, speakers will silence themselves rather than risk liability.” Planned Parenthood II, 290 F.3d at 1108.
Under a purely objective test, speakers whose ideas or views occupy the fringes of our society have more to fear, for their violent and extreme rhetoric, even if intended simply to convey an idea or express displeasure, is more likely to strike a reasonable person as threatening. They are the ones more likely to abstain from participating fully in the marketplace of ideas and political discourse. A specific intent requirement would alleviate this chilling effect by providing speakers the solace of knowing that they cannot be convicted for negligently making a threat. It would provide them “the necessary ‘breathing space’ to speak freely and openly.” Crane, supra, at 1273.
Imposing such a specific-intent-to-threaten requirement to achieve this end has a sound basis in First Amendment jurisprudence. As we have previously recognized, to prevent the chilling and potential suppression of protected speech, certain classes of speech that generally fall outside of First Amendment protections require proof of a heightened, subjective mens rea before they may be punished. See, e.g., Rice v. Paladin Enters., Inc., 128 F.3d 233, 247 (4th Cir.1997) (“[T]o prevent the punishment or even the chilling of entirely innocent, lawfully useful speech, the First Amendment may in some contexts stand as a bar to the imposition of liability on the basis of mere foreseeability or knowledge that the information one imparts could be misused for an impermissible purpose.”). For example, when speakers level allegedly defamatory falsehoods against public officials or public figures, plaintiffs seeking to recover civilly must demonstrate the speakers made the statements with actual malice. Gertz v. Robert Welch, Inc., 418 U.S. 323, 342-43, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). And speech constitutes constitutionally proscribable incitement only if (1) the speaker possesses a specific intent to produce or incite others to imminent lawless action and (2) the speech is likely to have that effect. Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam) (“[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.” (footnote omitted)); see also Hess v. Indiana, 414 U.S. 105, 109, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (per curiam) (holding that the defendant’s speech was not constitutionally proscribable incitement in part because “there was no evidence, or rational inference from the import of the language, that his words were intended to produce, and likely to produce, imminent disorder” (emphasis omitted)); James v. Meow Media, Inc., 300 F.3d 683, 698 (6th Cir.2002) (recognizing that the Brandenburg test for incitement requires proof of intent); Eugene Volokh, Crime-Facilitating Speech, 57 Stan. L.Rev. 1095, 1193 (2005) (“[Tjhere is precedent for using intent ... as part of First Amendment tests: Under the incitement test, speech that is intended to and likely to cause imminent harm is unprotected. Speech that the speaker merely knows is likely to cause imminent harm is protected.” (footnote omitted)). The First Amendment, therefore, imposes heightened, subjective mens rea requirements in certain contexts to ensure “that preeminent values underlying that constitutional *526 provision [are] not ... imperiled.” Rice, 128 F.3d at 247. For the reasons I have stated, I think the true-threats context warrants such a subjective-intent requirement to alleviate the chilling effect that a purely objective standard causes, and I believe the Supreme Court has recognized such a requirement.
III.
In instructing the jury as to Counts 1 and 5, which charged White with violating § 875(c), the district court correctly charged the jury that, to convict, it had to find that the communications in question constituted true threats because the First Amendment does not protect true threats. The court instructed the jury on the objective test for determining whether a communication is a true threat. It then stated that “[t]he government does not have to prove that the defendant subjectively intended for the recipient to understand the communication as a threat.”
At the conclusion of the jury instructions, White noted his objection based on his “proposed instruction on free speech and true threats.” His proposed jury instruction added to the objective test a specific-intent-to-threaten requirement.[4] Although acknowledging that the district court had indicated it would not give his proposed instruction, he nevertheless indicated his desire to preserve the issue for appeal. The district court noted the proposed instruction was in the record, but reaffirmed that it would not give the instruction. In light of these efforts, White, in my view, adequately preserved the issue for appeal and may challenge the jury instructions here.
Because the district court’s jury instruction contained an error of law in that it informed the jury it did not have to find that White specifically intended to threaten the victims, I would vacate his convictions for Counts 1 and 5. Otherwise, I am pleased to concur in the remainder of the majority opinion.

. White’s brief, in addressing this issue, does not specify whether he is challenging the jury instructions or the denial of his motion for judgment of acquittal. But, in his brief, he expressly incorporates the arguments made by the American Civil Liberties Union of Virginia, Inc. (ACLU) in its amicus brief. The ACLU clearly asserts error as to both the jury instructions and the denial of the motion for judgment of acquittal. So I consider the issue concerning the erroneous jury instruction preserved and properly before us on appeal. Rather than reviewing whether substantial evidence exists to support the jury's verdict, as *519 we do when reviewing the denial of a motion for judgment of acquittal, see United States v. Hackley, 662 F.3d 671, 678 (4th Cir.2011), it strikes me as more appropriate to determine first whether the jury convicted White pursuant to a proper jury instruction, for if not, that would require us to vacate his convictions. I therefore will address the alleged error as to the jury instruction.

. Justice O’Connor authored the plurality opinion, which Chief Justice Rehnquist, Justice Stevens, and Justice Breyer joined. Justice Scalia joined parts of Justice O’Connor's opinion, including her discussion of what constitutes a true threat, to make those parts a majority opinion, but he did not join the part addressing the constitutionality of the prima facie evidence provision.

. For an overview of the competing interpretations, see Paul T. Crane, Note, ‘‘Tme Threats” and the Issue of Intent, 92 Va. L.Rev. 1225, 1256-60 (2006).

. His proposed instruction stated as follows:
The Free Speech Clause of the First Amendment does not protect statements that are "true threats.” A statement made by a person constitutes a "true threat” when: first, a person makes a statements that, in context, a reasonable listener would interpret as communicating a serious expression of an intent to inflict or cause serious harm on or to the listener or the target of the communication; and second, the speaker intended that the communication be taken as a threat that would serve to place the listener or target of the communication in fear for his or her personal safety, regardless of whether the speaker actually intended to carry out the threat.
White’s proposed jury instruction, which included a specific-intent-to-threaten requirement, must be distinguished from his proposed amendments to the government’s proposed jury instruction. The government’s proposed jury instruction disavowed a specific-intent-to-threaten requirement, and White’s proposed amendments to it did not add one.