**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 18-4355**

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MICHAEL KIPP,

        Defendant - Appellant.

_____

**No. 18-4366**

_____

UNITED STATES OF AMERICA.

        Plaintiff - Appellee,

    v.

JOANNE VIARD,

        Defendant - Appellant.

_____

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:15-cr-00244-MOC-DSC-1; 3:15-cr-00244-MOC-DSC-2)

_____

Argued: May 9, 2019                          Decided: November 5, 2019

_____

Before WILKINSON and KING, Circuit Judges, and Irene C. BERGER, United States District Judge for the Southern District of West Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Eric B. Bruce, FRESHFIELDS BRUCKHAUS DERINGER US LLP, Washington, D.C.; Michael Volkov, VOLKOV LAW GROUP LLC, Washington, D.C., for Appellants. William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** W. Rob Heroy, Michael J. Greene, GOODMAN, CARR, LAUGHRUN, LEVINE & GREENE, Charlotte, North Carolina; Karen Sweigart, THE VOLKOV LAW GROUP LLC, Washington, D.C., for Appellants. William T. Stetzer, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Michael Kipp and Joanne Viard were employed at Swisher Hygiene Inc., a sanitation company, from 2011 through 2012. Both are certified public accountants (CPAs). Kipp was the Chief Financial Officer (CFO), while Viard was Director of External Reporting, and was eventually promoted to Controller. They were responsible for reporting financial information to the public, the Securities and Exchange Commission (SEC), lenders, and auditors. The United States charged them with various offenses related to an accounting fraud scheme, whereby they manipulated the numbers to ensure Swisher met pre-determined earnings targets. They were charged in Count One with conspiracy to commit securities fraud, to make false and/or misleading statements, and to falsify books, records, and accounts, in Count Two with participating in a wire fraud scheme, and in Count Three with committing securities fraud. Kipp was individually charged with bank fraud in Count Four. Kipp and Viard were separately charged with misleading conduct to hinder an investigation, although those charges were dismissed at the close of the Government's case.

Following a three-week bench trial, Kipp was convicted of Counts One, Two, Three, and Four, and Viard was convicted of Count One, and acquitted as to Counts Two and Three. The District Court entered a fifty-page opinion detailing findings and conclusions based on the evidence presented at trial. Kipp and Viard now contend that the District Court's opinion contains several factual conclusions that are unsupported by the record and that their convictions are not supported by substantial evidence.

3

The facts are recounted in the light most favorable to the Government as the prevailing party at trial. *United States v. Landersman*, 886 F.3d 393, 399 (4th Cir. 2018) (citing *United States v. Garcia–Ochoa*, 607 F.3d 371, 376 (4th Cir. 2010)).

I.

Swisher was undergoing rapid expansion through aggressive acquisitions during the time period at issue. The company generated adjusted earnings estimates, known as EBITDA, or earnings before interest, taxes, depreciation, and amortization. Kipp sent the pre-determined adjusted EBITDA target to the accounting department. Kipp, Viard, and others then used an earnings management scheme to ensure that Swisher met the target during the close process for the second and third quarters of 2011. They engaged in the same practice for the fourth quarter and the annual close for 2011, but the scheme was uncovered before entering the final report for the fourth quarter.

Kipp emphasized the importance of meeting the EBITDA targets and demanded that accounting staff search for entries that would bring the financial statements in line with the targets, insisting that the quarter would not close until the company met the target. When employees found mistakes or required entries that would move the numbers in the wrong direction, Kipp demanded that they find positive entries to offset the negative entries. For example, during the third quarter close process, Kipp emailed Viard on Saturday, October 15, 2011, stating that they needed "to get about $300k in expense reductions." J.A. 4468. Viard responded with ideas for expense reductions that she believed could be justified. In another email, Viard informed Kipp and others of a negative entry that would bring the EBITDA numbers below the target, asking if they could "find the offset." J.A. 4277. Kipp

4

emailed another employee on October 15, 2011, asking him to "Do [his] best to get $200k. We need to stretch a bit to get to the numbers in Q3. . . . At the end of the day if we get to the number I will let some come back your way." J.A. 4508. In short, the goal of the close process was to meet the EBITDA targets, not to generate an accurate financial report.

## II.

Judgments from a bench trial are reviewed "under a mixed standard of review: factual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo." *United States v. Landersman*, 886 F.3d 393, 406 (4th Cir. 2018) (quoting *Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d 333, 340 (4th Cir. 2016)). "In assessing the sufficiency of the evidence presented in a bench trial, we must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." *United States v. Armel*, 585 F.3d 182, 184 (4th Cir. 2009) (quoting *Elliott v. United States*, 332 F3d 753, 760-61 (4th Cir. 2003)). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996).

## III.

The District Court outlined several specific examples of entries that "were made for a fraudulent purpose and also fraudulent in and of themselves." *United States v. Kipp*, No. 3:15-CR-00244-MOC-DSC, 2017 WL 2662983, at *4 (W.D.N.C. June 20, 2017). Kipp and Viard focus on asserted errors in the District Court's discussion of each accounting entry. Many of the "errors" cited by Kipp and Viard reflect permissible findings by the

5

District Court, acting as a fact-finder free to make credibility determinations and to draw reasonable inferences from testimony and evidence. Other assertions of error rest on the District Court's failure to address purportedly mitigating testimony or evidence. However, the question on appeal is whether the District Court's opinion is supported by substantial evidence, not whether there was evidence that could have supported a different result.

At times, the District Court's exhaustive opinion recounts equivocal testimony as though it was clear and unambiguous. For example, one accounting entry designated a contract as unfavorable. Viard had discussed the entry with an outside consultant. In emails, the consultant explained that it was unlikely that a contract freely negotiated a relatively short time ago would be unfavorable, because the contract price would have incorporated contract terms that could increase costs. J.A. 4280–4284. The District Court stated that he "testified that he advised Viard that the contract was not unfavorable." *Kipp*, 2017 WL 2662983, at *5. The witness testified to the content of the emails, explained his reasoning, and indicated that he did not recall the content of the telephone conversation with Viard referenced in the emails. J.A. 1239–1250. He did not testify that he explicitly advised Viard that the contract was not unfavorable, though it was a clear implication of the guidance contained in the emails. A trial verdict cannot be overturned on the basis of a few instances of imprecise language, or even a few instances of errors as to minor details that do not alter the overall assessment of the case.

The outcome of the prosecution and of this appeal does not turn only on whether each individual accounting entry highlighted by the United States could be justified. The District Court repeatedly made clear that the entries were not problematic simply because

6

they rested on questionable interpretations of accounting principles. The entries were problematic because they were motivated by the goal of reaching a target number, tainting the entire process. With respect to evidence that the entries were mistakes, rather than intentionally non-compliant, the District Court found that Kipp was "simply attempting to *increase* EBITDA after the close of each quarter through accounting and earnings management. There was simply no evidence that he was in any manner attempting…to accurately report the earnings of Swisher." *Kipp*, 2017 WL 2662983, at *22.

Kipp, Viard, and other members of the accounting team searched only for new entries or alterations that would help them reach the target. They always erred in the same direction. Once they reached the magic number, they ended the process of verifying the accuracy of the account entries and closed the quarter. After weighing the evidence and evaluating the credibility of witnesses, the District Court rejected their defenses as to the counts of conviction. The District Court's findings and conclusions were supported by substantial evidence as to each count of conviction.

IV.

For the foregoing reasons, the judgments of the district court are

*AFFIRMED*.

7